THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CONNOR ALAN RORVIK, | CASE NO. C17-0946-JCC |
| Plaintiff, | ORDER |
| v. | |
| SNOHOMISH SCHOOL DISTRICT, *et al.*, | |
| Defendants. | |

This matter comes before the Court on Defendants' motion for summary judgment (Dkt. No. 17). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS the motion for the reasons explained herein.

I. **BACKGROUND**

Plaintiff, a former student at Glacier Peak High School, is suing the Snohomish School District and its Superintendent, Kent Kultgen, along with Glacier Peak's Assistant Principal, Lance Peters, and its Security Monitor, Darlene Gibson. (Dkt. No. 1-1 at 3–4.) Plaintiff alleges that on March 6, 2018, Gibson unlawfully seized and searched his cellphone and Peters unlawfully interrogated him and used the fruits of that interrogation to support an unlawful search of his car. (*Id*. at 4–6, 9.) Then, upon the discovery of contraband within the car, Peters, Kultgen, and the District failed to provide Plaintiff due process when the school suspended him

for bringing contraband onto school grounds. (*Id*. at 6–9.) Plaintiff brings claims pursuant to 42 U.S.C. section 1983, alleging Fourteenth Amendment violations through incorporation of Fourth and Fifth Amendment protections. (*Id*. at 10–13.) He also seeks injunctive relief for alleged violations of Article I, Section 7 of the Washington Constitution. (*Id*. at 11–13.)

Plaintiff was an eighteen-year-old senior at Glacier Peak High School on the day of the incident, which began when Plaintiff went to his car during the school day using a forged permission slip. (*Id*. at 4.) He had parked his car on school grounds and was subject to the School's "Student Parking Rules & Regulations," which he signed a copy of at the beginning of the year. (Dkt. No. 18-1 at 97.) The one-page document indicates that the signer understands that "by parking on campus, my vehicle is subject to search." (*Id*.) The document also indicates that students "are not permitted to go to (be at or in) a vehicle" during school hours and "school inappropriate items" are not permitted "on or in [a student's] vehicle." (*Id*.)[1]

Security Monitor Gibson approached Plaintiff as he returned from his car and demanded to see Plaintiff's permission slip, which she questioned the authenticity of. (*Id*. at 121.)[2] Plaintiff eventually confessed that he had forged the slip. (*Id*.) Gibson confiscated Plaintiff's cell phone and escorted him to the School's administration office, where he was told to wait until Assistant Principal Peters was available to discuss the matter. (*Id*. at 121–22.) According to Peters, Gibson later indicated to him that she returned to the car while Plaintiff waited for Peters and, upon peering through the car's tinted windows, viewed what she believed to be a bong in the back of the vehicle. (*Id*. at 113.)

---

[1] The School's policy in effect at the time provided that the possession of "pellet guns" or "pocket knives" represents "exceptional misconduct" warranting suspension or expulsion. (Dkt. No. 18-1 at 47.) Further, the District's Student/Parent Handbook in effect at the time provided that the possession of drug paraphernalia would result in suspension for up to twenty days. (*Id*. at 78.)

[2] This followed an incident five weeks prior, where Gibson caught Plaintiff accessing his car without permission. (Dkt. No. 18-1 at 99.) She told him at the time that the next time he did so, he would lose his parking privilege for two weeks. (*Id*.)

Eventually, Peters called Plaintiff into his office to discuss the matter. (*Id*. at 122.) Gibson was present, as was Peters' assistant, Ms. McGowan. (*Id*.) Peters has testified that, based on Gibson's report, he felt that he had reasonable suspicion to search Plaintiff's car at the time of his discussion with Plaintiff. (*Id*. at 118.) As a result, he did not believe that he needed to seek Plaintiff's consent. (*Id*.) Regardless, Plaintiff has admitted that at some point during the discussion, Peters asked him if "there would 'be a problem' if he and Ms. Gibson" were to "search [his car] and I said no." (*Id*.) Initially, Plaintiff told Peters that there was nothing in the car that he should not have at school, although once Peters informed him that he was now ready to go search the car, Plaintiff disclosed that he had a bong in the car. (*Id*.)

Plaintiff, Peters, and Gibson then walked out to Plaintiff's car. (*Id*.) Peters opened the door and located the bong. (*Id*.) He also searched the remainder of the car and found two knives, a plastic bag containing what appeared to be prescription and nonprescription pills, vape devices and vape oils, and more drug paraphernalia—an empty marijuana grinder, a marijuana dabber, empty joint tubes, six lighters, and two butane torches. (*Id*.) He also found a BB gun. (*Id*.) Peters radioed School Resource Officer Schwartzmiller, who arrived on scene along with his supervisor, confirmed that it was a BB gun, and took possession of it. (*Id*.) Peters gathered the remaining contraband and returned to his office, along with Gibson and Plaintiff. (*Id*. at 124.) Peters then called Plaintiff's father, told him what happened, and directed Plaintiff to stay until his father arrived. (*Id*.)

Schwartzmiller came to Peters' office while Plaintiff waited for his father. (*Id*.) He informed Plaintiff that a case was being opened for the BB gun,[3] issued a *Miranda*[4] warning, and asked Plaintiff for a written statement. (*Id*.) Plaintiff provided the statement, indicating that he

---

[3] It is a gross misdemeanor to "carry onto" or "possess on . . . school premises . . . or areas of facilities while being used exclusively by public or private schools . . . [a]ny air gun, including any air pistol or air rifle, designed to propel a BB or pellet." Wash. Rev. Code. § 9.41.280. Such an offense also constitutes "grounds for expulsion." *Id*.

[4] *See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966).

ORDER
C17-0946-JCC
PAGE - 3

did ot know whose gun it was, how it got into his car, or how long it had been there. (*See* Dkt. No. 19-1 at 2–8) (Initial Case Report). Ultimately, the County Prosecutor declined to bring any charges relating to the incident. (Dkt. No. 18-2 at 13.) Plaintiff left with his father and cellphone, which school officials returned once his father arrived. (*Id*. at 8.)

Plaintiff received a forty-day suspension. (*Id*. at 19.)[5] Plaintiff's parents appealed the suspension in accordance with the District's grievance procedures. (Dkt. No. 24 at 45–46.) District Hearing Officer Gary Taber presided over the resulting March 13, 2017 hearing. (*See* Dkt. No. 18-2 at 46–175) (transcript of proceeding). Taber upheld the suspension. (*Id*. at 184–86.) He issued a letter on March 14, 2018 communicating this decision, which included findings of fact. (*Id*.) With the assistance of counsel, Plaintiff's parents appealed Taber's decision to the District's Board of Directors. (Dkt. Nos. 18-2 at 187, 189; 24-2 at 116–23.) The Board affirmed the Hearing Examiner's determination, but indicated in a March 23, 2017 letter that the suspension could be reduced to twenty-five days if Plaintiff completed a drug/alcohol assessment and complied with resulting recommendations, which he did. (Dkt. No. 18-2 at 200–01); (*see* Dkt. No. 24-1 at 3) (chemical dependency assessment). Plaintiff returned to school after serving his twenty-five-day suspension and has since graduated. (Dkt. No. 5 at 2.)[6]

Plaintiff filed the instant claims in Snohomish County Superior Court on May 31, 2017. (Dkt. No. 1-1.) They relate to the following allegedly unlawful events: the confiscation of his cell phone, the meeting in Peters' office, Peter's search of his car, and the manner in which Taber conducted the appeal hearing. (*Id*.)[7] Defendants removed the matter to this Court and now move

---

[5] Plaintiff could attend the District's Student Learning Alternative Campus during his suspension. (Dkt, No. 18-2 at 19.)

[6] Plaintiff's parents remained dissatisfied with the Board's decision and filed a Notice of Appeal of the Board's decision with Snohomish County Superior Court the day after the suspension ended, on April 20, 2017. (Dkt. No. 18-2 at 214–29). Plaintiff is unsure of the status of that proceeding. (*Id*. at 9.)

[7] Plaintiff, in opposing summary judgment, also argues that the Board's review of Taber's appeal hearing was conducted in an unlawful manner. (*See* Dkt. No. 29 at 8–11.) But the

for summary judgment (Dkt. No. 1, 17). They seek the dismissal of all section 1983 claims based on Plaintiff's failure to establish constitutional violations and the dismissal of Plaintiff's Article I, Section 7 Washington Constitution claims on the basis that the provision does not, on its own, provide a cause of action for the requested relief. (Dkt. No. 17 at 12–25). In the alternative, Defendants seek the dismissal of all claims against Superintendent Kultgen based on a lack of specific allegations against him, the dismissal of claims against individual defendants based upon qualified immunity, and the dismissal of section 1983 claims against the District based on Plaintiff's failure to establish *Monell*[8] liability. (*Id.*)

For the reasons described below, the Court finds that summary judgment is warranted based upon Plaintiff's failure to establish constitutional violations, his failure to establish *Monell* liability even if constitutional violations had occurred, and his failure to demonstrate that Article I, Section 7 of the Washington Constitution provides a cause of action for the relief Plaintiff seeks. The Court does not reach Defendants' remaining arguments in support of their motion for summary judgment.

## II. DISCUSSION

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making such a determination, the Court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Once a motion for summary judgment is properly made and supported, the opposing party "must come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S.

---

Complaint does not contain the necessary factual allegations to support this claim and the Court will not consider it. *See Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008).

[8] *See Monell v. Dept. of Soc. Services of City of New York*, 436 U.S. 658, 692 (1978).

574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson*, 477 U.S. at 248–49.

### B. Section 1983 Liability

To establish liability under 42 U.S.C. section 1983, a plaintiff must demonstrate that (1) the defendant acted under color of state law, and (2) the defendant deprived the plaintiff of a right secured by the Constitution or laws of the United States. *Learned v. City of Bellevue,* 860 F.2d 928, 933 (9th Cir. 1988). Section 1983 liability generally arises only upon a showing of a defendant's personal participation in the alleged violation.[9] *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). However, qualified immunity acts as a bar against section 1983 claims insofar as the government official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises the defense of qualified immunity, the plaintiff bears the burden of proving the existence of a clearly established right at the time of the allegedly impermissible conduct. *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). "If the plaintiff cannot meet this burden, the inquiry ends and defendants are entitled to summary judgment." *Sepatis v. City and Cty. of San Francisco*, 217 F. Supp. 2d 992, 997 (N.D. Cal. 2002). In the context of searches and seizures of students while in school, the constitutional standards are relaxed. *New Jersey v. T.L.O.*, 469 U.S. 325, 341 (1985). A school official need only have reasonable suspicion to support a search or seizure of a student. *Id*.

//

//

---

[9] In some circumstances, a supervisor or governing body may also be subject to liability under section 1983. *See Monell*, 436 U.S. at 690 (A governing body can be sued under section 1983 where the challenged action "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.").

### 1. Confiscation of Cell Phone

Plaintiff first alleges that by confiscating his phone, Monitor Gibson conducted an unreasonable search and seizure. (Dkt. No. 1-1 at 12–13.) Specifically, Plaintiff alleges that Gibson conducted an unreasonable seizure when she held his phone for approximately three hours while Defendants conducted an investigation regarding his forging of a permission slip to access his car containing contraband. (Dkt. No. 29 at 19.) However, Plaintiff presents no relevant legal citation supporting the argument that a school official conducts an impermissible seizure when he or she confiscates a cell phone during a routine disciplinary investigation.[10] Nor is it this Court's role to search out this authority on Plaintiff's behalf. *See Indep. Towers of Wash. v. Wash.*, 350 F.3d 925, 929 (9th Cir. 2003). Further, the confiscation of Plaintiff's phone was consistent with school policy. (Dkt. No. 25 at 116); (*see* Dkt. Nos. 18-1 at 21) (Gibson explained to Plaintiff that she took the phone away so he could not contact anyone while the investigation was ongoing). By all indications, this is a reasonable policy. It allows the school to limit a student's ability to manipulate an ongoing investigation (such as by contacting conspirators to assist in concealing evidence). Therefore, Plaintiff fails to support his argument that the confiscation of the phone was an unreasonable search or seizure.

Accordingly, Defendants' motion for summary judgment as to Plaintiff's section 1983 claim on the confiscation of his phone is GRANTED.

//

//

---

[10] The case Plaintiff does cite is inapposite. (*See* Dkt. No. 29 at 19.) *G.C. v. Owensboro Pub. Schools* involved reading text messages on an unlocked phone. 711 F.3d 623, 632 (6th Cir. 2013). Plaintiff speculates that "one or more persons may have tried to access [his] cell phone and view its contents." (Dkt. No. 1-1 at 13.) However, he presents no evidence to support this assertion. (*See generally* Dkt. No. 29.) Further, he concedes that he has no "reason to believe" that anyone at school had the password for the phone. (Dkt. No. 18-1 at 12); (*see id.* at 11) (Plaintiff's admission that he assumed the phone was searched solely because it was out of his possession).

2. <u>Meeting in Peters' Office</u>

Plaintiff next alleges that his meeting in Peters' office required a *Miranda* warning. (Dkt. No. 1-1 at 10–11.) But Plaintiff's Fifth Amendment right against self-incrimination, for which a *Miranda* warning would be required, only applies to (a) a custodial interrogation resulting in information to be used in (b) a criminal case. *Chavez v. Martinez*, 538 U.S. 760, 766 (2003). Plaintiff fails to present sufficient evidence to demonstrate either.

For the meeting to have been a custodial interrogation, Peters needed to be acting on behalf of law enforcement. *K.A. ex rel. J.A. v. Abington Heights Sch. Dist.*, 28 F. Supp. 3d 356, 366 (M.D. Pa. 2014) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 487 (1971)). Plaintiff presents no evidence to support such an assertion. (*See generally* Dkt. No. 29 at 14–21.) Further, it is undisputed that Peters only called Officer Schwartzmiller upon discovering the BB gun in Plaintiff's car, which was well *after* the alleged interrogation. (Dkt. No. 29 at 6.)

Nor is the Court moved by Plaintiff's argument that, given the small size of the room and the number of adults present—three—the meeting was sufficiently coercive to constitute a custodial interrogation. (*See id.* at 14.) The argument is contradicted by Plaintiff's statement that he was not nervous and was "relaxed the entire time" and only felt threatened when "they said we're going to search [Plaintiff's] car." (Dkt. No. 18-1 at 24–25.)

Moreover, even if the discussion was a custodial interrogation, the resulting statement must lead to "legal proceedings" for *Miranda* to apply. *Chavez*, 538 U.S. at 766 ("a 'criminal case' at the very least requires the initiation of legal proceedings."). No such proceedings occurred here. (*See* Dkt. No. 18-2 at 13) (Snohomish County Prosecuting Attorney's Decline Notice).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's section 1983 claim on the discussion in Peters' office is GRANTED.

//

//

### 3. Vehicle Search

Plaintiff also alleges that Peters' search of his car was unreasonable and, therefore, constitutionally deficient. (Dkt. No. 1-1 at 11–12.) Ignoring the issue of consent, all that was required was reasonable suspicion. *T.L.O.*, 469 U.S. at 341. This is supported by a search that is "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference." *Id*. A search is "justified at its inception when there are reasonable grounds for suspecting that the search will turn up evidence that the student has violated or is violating either the law or the rules of the school." *Id*. at 341–42. Further, a search is permissible in scope when the measures used are "reasonably related to the objectives of the search and not excessively intrusive in light of the age and sex of the student and the nature of the infraction." *Id*.

Here, it is uncontested Gibson told Peters that she saw a bong in the passenger area of the car. (Dkt. No. 18-1 at 113.)[11] Plaintiff also admitted that there was a bong in his car during his discussion in Peters' office. (*Id*. at 123.) Therefore, a search of the passenger area was justified at its inception and not excessively intrusive. In doing so, Peters found, in addition to the bong, vape devices, a BB gun, more drug paraphernalia, and two knives. (*Id*.) Collectively, these discoveries were sufficient to support a search of the trunk and a secret compartment within the trunk, where nothing more was found. (*Id*. at 124.)

Accordingly, Defendants' motion for summary judgment as to Plaintiff's section 1983 claim on the search of his car is GRANTED.

---

[11] Plaintiff attempts to make light of the fact that Gibson wrote in a contemporaneous statement that she told Peters there "*may be* [drug] paraphernalia" in Plaintiff's car rather than that there *is* paraphernalia in the car. (Dkt. No. 25 at 91) (emphasis added). Plaintiff suggests this supports a contention that Gibson "never told Mr. Peters specifically what she observed in the car." (Dkt. No. 29 at 4.) But as Gibson later clarified in her sworn testimony, she "verbally told" Peters that she saw a bong, then chose to soften the language in her statement to be as "non-accusatory or inflammatory as possible." (Dkt. No. 25-1 at 73.) This assertion is confirmed by Peters' testimony. (*See* Dkt. No. 18-1 at 114) (Peters indicates that Gibson "definitively" told him that she saw a bong in Plaintiff's car). Plaintiff offers no countervailing evidence on this issue.

### 4. Appeal Before the Hearing Examiner

Finally, Plaintiff repeatedly alleges that the manner in which Taber conducted the appeal hearing violated his due process rights. (Dkt. Nos. 1-1 at 7–10; 29 at 9–12, 21–24.) According to the District's policies, Plaintiff was entitled to the following rights at the hearing: representation by counsel, the opportunity to explain the alleged misconduct, the opportunity to present evidence, the opportunity to confront witnesses, and a digital recording of the hearing. (Dkt. No. 18-2 at 32.) Despite Plaintiff's allegations to the contrary, it appears to the Court that this is exactly what Plaintiff received. (*See* Dkt. No. 18-2 at 46–175) (transcript of proceeding). Therefore, Plaintiff fails to demonstrate that the hearing was not held in accordance with District policy.

Plaintiff also alleges that Taber failed to act as a neutral, detached, and impartial decision maker in that he (a) held an improper *ex parte* meeting with school officials prior to the appeal hearing, (b) refused to allow Plaintiff to cross-examine witnesses outside the presence of other witnesses, (c) indicated that his goal was "not to rehear the case . . . *this is not a time to protest, per se, the facts of the situation*," and (d) placed "his thumb on the scale firmly in favor of the District and, in some cases, overtly prosecuted the District's case for them." (Dkt. No. 1-1 at 7–8) (emphasis in original); (Dkt. No. 29 at 23). None of these allegations save Plaintiff's claim.

First, Plaintiff cites no authority for the proposition that, in the context of an administrative hearing, *ex parte* contact is impermissible or that cross-examination of witnesses outside the presence of other witnesses is required. (*See generally* Dkt. No. 29); *see also Indep. Towers of Wash.*, 350 F.3d at 929 (a properly briefed claim goes beyond "issue spotting"). Second, while Taber did indicate early on that the purpose of the hearing was not to protest the facts of the situation, he later corrected the statement, indicating that there were "two reasons for holding a hearing like this. One is to contest facts of the situation. The other is to contest the consequences." (Dkt. No. 18-2 at 58–59.) He then gave Plaintiff's parents the option of choosing which they wanted, and they indicated they wanted "both." (*Id*. at 59.) A review of the totality of

the proceeding confirms that, in fact, this is what happened. (*See* Dkt. No. 18-2 at 46–175.) Plaintiff and his parents presented evidence and vigorously questioned Peters, Gibson, and McGowan's accounts of the events the day of the incident. (*Id.*) Third, while Taber did question witnesses during the hearing, Plaintiff again fails to demonstrate how this is impermissible in the context of an administrative hearing. *See Indep. Towers of Wash.*, 350 F.3d at 929. Therefore, Plaintiff fails to demonstrate a due process violation.

Further, even if Taber's conduct did violate Plaintiff's due process rights, for section 1983 liability to attach to the District,[12] Plaintiff must demonstrate that the District had a deliberate policy, custom, or practice that was the moving force behind Taber's violations. *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Plaintiff provides no evidence of such a policy, practice, or custom, other than the circumstances surrounding this particular incident. (*See* Dkt. No. 29 at 22–24.) "A plaintiff cannot prove the existence of a municipal policy or custom based on the occurrence of a single incident of unconstitutional action by an employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989).

Accordingly, Defendants' motion for summary judgment as to Plaintiff's section 1983 claim on the appeal hearing before Taber is GRANTED.

### C. Violation of Washington Constitution

Plaintiff further asserts that Defendants violated his right to privacy under the Washington Constitution. (Dkt. No. 1-1 at 11–13.) Article I, section 7 states that "[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law." WASH. CONST. Art. I, § 7. However, "Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation." *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) (internal quotes omitted); *see also Reid v. Pierce Cty.*, 961 P.2d 333, 343 (Wash. 1998) (declining to consider whether a constitutional cause of action should be established).

---

[12] Plaintiff does not name Taber as a defendant. (*See generally* Dkt. No. 1-1 at 3.)

Accordingly, summary judgment on Plaintiff's Washington constitutional claim is GRANTED.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. No. 17) is GRANTED. Plaintiff's claims are DISMISSED with prejudice.

DATED this 16th day of August 2018.

John C. Coughenour
UNITED STATES DISTRICT JUDGE